**IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **No. 10 CR 981** |
| **v.** | ) | |
| | ) | **Honorable John F. Grady** |
| **TYRICE GLOVER** | ) | |

### NOTICE OF FILING

TO:    Christopher McFadden
        Assistant United States Attorney
        219 S. Dearborn St., 5th Floor
        Chicago, IL 60604

       Please take notice that on this 31st day of August 2012, the undersigned filed the following document in the above-captioned case, a copy of which is attached hereto:

### MOTION TO SUPPRESS EVIDENCE

                *s/ Rose Lindsay-Guimarães*
                ROSE LINDSAY-GUIMARÃES
                FEDERAL DEFENDER PROGRAM
                55 East Monroe St., Suite 2800
                Chicago, IL 60603
                (312) 621-8341

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **No. 10 CR 981** |
| **v.** | ) | |
| | ) | **Honorable John F. Grady** |
| **TYRICE GLOVER** | ) | |

**MOTION TO SUPPRESS EVIDENCE**

Defendant TYRICE GLOVER, by the Federal Defender Program and its attorney, ROSE LINDSAY-GUIMARÃES, respectfully requests, pursuant to the Fourth Amendment to the United States Constitution, Federal Rule of Criminal Procedure 12(b)(3), Illinois v. Gates, 462 U.S. 213 (1983), United States v. Leon, 468 U.S. 897 (1984), Franks v. Delaware, 438 U.S. 154 (1978), and Wong Sun v. United States, 371 U.S. 471 (1963), that this Honorable Court enter an order suppressing all evidence obtained as a result of the search and seizure of Tyrice Glover and his residence in Chicago, Illinois, on July 23, 2010, and any fruits derived from the searches, namely: (1) three firearms and associated ammunition, (2) approximately 14 grams of heroin, (3) miscellaneous alleged drug paraphernalia, (4) United States currency, (5) miscellaneous documents and photographs purportedly belonging to Glover, and (6) Glover's post-arrest statements.

Suppression of this evidence is proper because the search warrant upon which the searches and seizures were based was not supported by probable cause, and the "good faith" exception to the exclusionary rule does not apply in this case.

## I.    Factual Background.

Glover has been charged in a three-count indictment with: (1) possession with intent to distribute a detectable amount of heroin, in violation of 21 U.S.C. § 841(a)(1); (2) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and (3) possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).  The charges arise from the following events, as described in Chicago Police Department reports and other documents that were tendered by the government as discovery in this case.

### A.    The search warrant complaint.

On July 23, 2010, Officer Jason E. Brown of the Chicago Police Department requested the issuance of a search warrant.  See Complaint for Search Warrant at 1, submitted separately as Exhibit A[1].  According to the complaint, Officer Brown stated that on the same day of the search warrant request, July 23, 2010, he "had the opportunity to speak with an individual" whom he referred to for purposes of the complaint as "John/Jane Doe [hereafter 'Doe']."  Ex. A at 1.  According to Doe, an individual Doe knew as "T.Y." (later identified as Glover) lived at 905 N. Kedvale in Chicago and was "presently in possession of two handgun(s) (one black semiautomatic handgun and one black 38 cal. revolver)."  Ex. A at 1.  The complaint specified that Doe had seen Glover with the two guns while in Glover's residence at 905 N. Kedvale on July 22, 2010, the day before the search warrant was sought.  Ex. A at 2.  According to the complaint, Doe had also "seen Glover in possession of these two handguns and others many times over the course of the past six weeks," and that "on each occasion it was while inside

---

[1]  Exhibits will be submitted to the Court as separate attachments in order to keep sensitive information out of the public record.

Glover's residence at 905 N. Kedvale" in Chicago, Illinois.  Ex. A at 2.

Officer Brown also described other information that Doe had allegedly offered about

Glover:

> Doe explained further that Glover had a "dope spot" which Doe described as a
> street level point of sale for narcotics, in this case heroin, which Glover supplied
> and oversaw the day to day operations of.  Doe stated further that Glover is a
> member of the Traveler Vice Lords and that he is also part of a "stick up crew"
> which Doe described as a group of lawless individuals that would identify good
> victims (individuals who possessed large amounts of money and/or narcotics) and
> then rob them.  Doe stated that it was because of Glover's involvement in both of
> these illegal activities that Glover keeps and stores his handguns in his residence
> at 905 N. Kedvale.

Ex. A at 2.

In addition to the information provided by Doe, the complaint described the efforts of

Officer Brown to corroborate Doe's story.  First, Officer Brown confirmed Glover's identity.

Officer Brown explained in the complaint that "[f]rom the information provided by Doe" he was

"able to produce a CPD Data Warehouse photograph of Tyrice Glover a/k/a 'T.Y.' . . . ."  Ex. A

at 1.  Officer Brown showed the photograph of Glover to Doe, who "was able to positively

identify Glover as the same individual referenced in the complaint."  Ex. A at 1–2.

Next, Officer Brown confirmed Glover's address by three different means.  First, he

confirmed that the photograph of Glover was associated with the address of 905 N. Kedvale

based on the address Glover himself had provided at the time of his most recent prior arrest in

January 2010.  Ex. A at 1–2.  Second, Officer Brown confirmed that the address to which Glover

was paroled when he was released from state custody in May 2009 was 905 N. Kedvale.  Ex. A

at 1–2.  And third, Officer Brown drove by Glover's residence with Doe, and Doe pointed out the

residence at 905 N. Kedvale as the place where Doe had seen Glover with two handguns on July

22, 2010.  Ex. A at 1–2.

      And finally, Officer Brown reviewed Glover's criminal history.  According to the complaint, Officer Brown learned that Glover was a two-time convicted felon and was on parole at the time of the complaint for one of the felony convictions, namely, an October 2005 conviction for home invasion with a firearm.  Ex. A at 2.

      Officer Brown concluded the complaint by asserting that based on the facts he had provided, he believed that there was probable cause to search both Glover's person and his residence.  Ex. A at 2.  Both pages of the complaint had signatures at the bottom for Officer Brown and "John Doe" as the complainants, the date of July 23, 2010, an illegible signature by the issuing judge, and the judge's number.  Ex. A at 1–2.

### B.    <u>Issuance of the search warrant.</u>

      On July 23, 2010, at 1:33 p.m., Judge David Skryd, Cook County Circuit Court Judge #1906, issued a search warrant based on Officer Brown's complaint.  <u>See</u> Search Warrant, submitted separately as Exhibit B; and Officer Brown's Police Report Regarding Execution of the Search Warrant at 2, submitted separately as Exhibit C.  Judge Skryd provided in the search warrant that Officer Brown and Doe had "subscribed and sworn to a complaint for search warrant before me."  Ex. B.  Judge Skryd concluded: "Upon examination of the complaint, I find that it states facts sufficient to show probable cause."  Ex. B.

      The search warrant authorized the search of "Tyrice Glover a/k/a 'T.Y.'" and provided Glover's gender, race, age, date of birth, height, weight, and various law enforcement and correctional institution identification numbers.  Ex. B.  The search warrant also authorized the search of Glover's home at 905 N. Kedvale, which was identified in the search warrant as a

4

single-family home in Chicago, Illinois.  Ex. B.  The following items were authorized for seizure pursuant to the warrant: "Two handguns (one black semiautomatic handgun and one black 38 cal. revolver), any ammunition or assorted attachments, and any documents showing or establishing proof of residency," which might constitute evidence of the unlawful use of a weapon by a convicted felon under Illinois law.  Ex. B.  The bottom of the search warrant contained Judge Skryd's illegible signature, his judge's number, the date of issuance of July 23, 2010, and the time of issuance of 1:33 p.m.  Ex. B.

### C.  Execution of the search warrant.

After Judge Skryd issued the search warrant based on Officer Brown's complaint, members of the Chicago Police Department's Gang Investigation Crime Division met and formulated a plan for the execution of the search warrant.  Ex. C at 4.  The police report detailing the execution of the search warrant listed nine officers as participants at the scene of the warrant's execution.  Ex. C at 2.

### 1.  The search and seizure of Glover's person.

At approximately 5:40 p.m. on July 23, 2010, Officer Brown and other team members were able to find Glover "while he was standing on the corner of Keystone and Iowa," which was "made possible through the cooperation of a confidential informant."[2]  Ex. C at 4.  Officer Brown's police report summarized what happened after the officers found Glover:

> Glover was then detained and informed of the search warrant for him and his residence.  Glover was then Mirandized and placed in the rear of Bt. 1121 and transported to his residence, approximately one block away where Glover

_____

[2]  Officer Brown's police report is the only place where the tipster was referred to as a "confidential informant."  Ex. C at 4.  The complaint for the search warrant only referred to the tipster as "an individual" who would be referred to as "John/Jane Doe" for purposes of the complaint.  Ex. A at 1.

remained in the car for the duration of the investigation.

Ex. C at 4.

Officer Brown's police report said nothing about the circumstances surrounding the search of Glover's person pursuant to the warrant. See Ex. C. The report contained only one reference to the execution of the search warrant as to Glover's person. At the end of the list of evidence recovered pursuant to the warrant, the following entry is provided: "Inv. 12078541: One bundle United States currency totaling $71.00 which was recovered from Glover's pocket by Off. Brown at the time he was detained at 4023 W. Iowa." Ex. C at 3. But the actual location of the seizure of the $71.00 from Glover's person is unclear because the three police reports that refer to the currency seized each state a different location for the seizure. As noted above, Officer Brown's police report stated that the currency was found on Glover's person at "4023 W. Iowa." Ex. C at 3. But the evidence processing sheet associated with the seized $71.00 indicated that the currency was recovered at "3340 W FILLMORE ST" in Chicago.[3] See Evidence Processing Sheet, submitted separately as Exhibit D. And a report that summarized the evidence recovered from execution of the warrant included the $71.00 at the end of a list of items seized at Glover's residence at 905 N. Kedvale. See Summary of Search Warrant Execution at 1–2, submitted separately as Exhibit E.

### 2.     The search of Glover's residence.

After Glover was detained in a squad car, the officers proceeded to Glover's home, arriving at approximately 5:44 p.m., about four minutes after encountering Glover on the street.

---

[3]  The Fillmore address listed on the evidence processing sheet is approximately 2.8 miles northwest (driving distance) from the corner of Keystone and Iowa where Glover was reportedly arrested according to the map of the area found at http://maps.google.com.

Ex. C at 4.  The officers forced entry into the residence when there was no response to Officer

Brown's knocking and announcement of the officers' presence.  Ex. C at 4.  Three people were

found in the residence, including Glover's father, James Sloan.  Ex. C at 2, 4.

Sloan, the owner of the home, informed law enforcement that Glover's bedroom was in

the basement, and that Glover's bedroom was the only bedroom in the basement.  Ex. C at 4.

The officers proceeded to search the entire three-level residence, with their primary focus on the

basement "due to Sloan's cooperation."  Ex. C at 4.

The officers found the following items in the basement bedroom: (1) two handguns and

associated ammunition, (2) one assault rifle and associated ammunition, (3) a state identification

card with Glover's identifying information, (4) a medical statement addressed to Glover, (5) six

photographs of Glover, and (6) $120.00 in United States currency.  Ex. C at 2–4; Ex. E at 1–3.

Outside the basement bedroom, on the floor near a washer and dryer, the officers found a bag of

miscellaneous alleged drug paraphernalia.  Ex. C at 3–4; Ex. E at 1–3.  And in the freezer

compartment of a refrigerator in the basement, the officers found a plastic bag containing

approximately 14 grams of heroin.  Ex. C at 3, 4; Ex. E at 1–3.

### 3. Glover's alleged post-arrest statements.

Officer Brown's police report summarized further law enforcement contact with Glover

after execution of the warrant at the residence as follows:

> Glover, who was sitting in the rear passenger compartment of Bt. 1121's
> enforcement vehicle was then informed by Off. Brown of the items found in, and
> around his bedroom.  Glover was then Mirandized once again and transported by
> Bt. 1121 to Unit 193 for preliminary processing.  While in Unit 193 Off. Brown
> had the opportunity to interview Glover . . . .

Ex. C at 4.  According to Officer Brown's report, when he questioned Glover, Glover denied

knowledge about the firearms recovered from his home, but allegedly stated that the heroin found at the residence was in fact his. Ex. C at 4. Glover then allegedly explained that he had purchased the heroin from an unknown individual from Milwaukee, Wisconsin, whom Glover had met through his cousin, and that Glover had intended to sell the heroin at his drug spot at Keystone and Iowa in Chicago. Ex. C at 4. Glover also allegedly stated that he was and had been an active member of the Traveler Vice Lords street gang. Ex. C at 4. Officer Brown explained in the report that "[t]his statement is not a verbatim account but rather a summary of the information provided by Glover." Ex. C at 4. According to the report, Officers Brown and Hurley were present when Glover allegedly made these statements. Ex. C at 4–5.

Officer Brown's report was silent as to whether Glover agreed, either verbally or in writing, to waive his rights and speak to law enforcement. See Ex. C. And the report did not mention, and did not attach, any waiver of rights form with Glover's signature or initials. See Ex. C.

## II.    **Analysis.**

The warrant for the search of Glover's person and his residence was not supported by probable cause and the "good faith" exception to the exclusionary rule does not apply to save the warrant in this case. Therefore, the evidence obtained from the execution of the warrant and any fruits of the illegal search and seizure must be suppressed.

### A.    **The issuance of the search warrant was not supported by probable cause.**

The search warrant in this case was not supported by probable cause. The affidavit requesting the search warrant was based on allegations of a first-time, untested, unknown informant and the affidavit contained virtually no information about his reliability, veracity, or

basis of knowledge. The affidavit was also lacking in even the most basic detail regarding Doe's

story. Though Doe appeared before the issuing judge, there is no evidence that the judge asked

questions sufficient to cure the numerous deficiencies in the affidavit. And Officer Brown's

minimal efforts to corroborate Doe's story were insufficient to make up for the dearth of

information in the affidavit. Therefore, under the totality of the circumstances, there was not a

substantial basis for the issuing judge to find probable cause to issue the warrant.

### 1. Search warrants and the Fourth Amendment generally.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects,
> against unreasonable searches and seizures, shall not be violated, and no Warrants
> shall issue, but upon probable cause, supported by Oath or affirmation, and
> particularly describing the place to be searched, and the person or things to be
> seized.

U.S. Const. amend. IV. The right to privacy in one's home is a most important interest protected

by the Fourth Amendment. See, e.g., Payton v. New York, 445 U.S. 573, 585 (1980) ("physical

entry of the home is the chief evil against which the wording of the Fourth Amendment is

directed"); United States v. Martinez-Fuerte, 428 U.S. 543, 561 (1976) (the right to "sanctity of

private dwellings" has been held to be the right "ordinarily afforded the most stringent Fourth

Amendment protection"). Therefore, under the Fourth Amendment, a judge may not properly

issue a warrant to search a private dwelling "unless he can find probable cause therefor from

facts or circumstances presented to him under oath or affirmation." Nathanson v. United States,

290 U.S. 41, 47 (1933). An affidavit must provide the magistrate with a "substantial basis" for

determining the existence of probable cause. Illinois v. Gates, 462 U.S. 213, 239 (1983). A

wholly conclusory statement fails to meet this requirement. Gates, 462 U.S. at 239. Sufficient

information must be presented to the magistrate to allow that official to determine probable

cause; his action cannot be a mere ratification of the bare conclusions of others.  Id. at 239.

Probable cause deals with "probabilities" that are "not technical," but rather are "the

factual and practical considerations of everyday life on which reasonable and prudent men, not

legal technicians, act."  Brinegar v. United States, 338 U.S. 160, 175 (1949).  Probable cause for

a search warrant exists when: "(1) [] it is *now probable* that (2) contraband, evidence of a crime,

or a fugitive *will be* on the described premises (3) when the warrant is executed."  United States

v. Grubbs, 547 U.S. 90, 96 (2006) (emphasis in original).  A probable cause determination is

based on the totality of the circumstances.  Gates, 462 U.S. at 238.  "The task of the issuing

magistrate is simply to make a practical, common-sense decision whether, given all the

circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband

or evidence of a crime will be found in a particular place."  Id.  When an affidavit is the only

evidence presented to a judge in support of a search warrant, the validity of the warrant rests

solely on the strength of the affidavit.  See United States v. Roth, 391 F.2d 507, 509 (7th Cir.

1967).

When an affidavit for a search warrant is based on information provided by a confidential

informant, the informant's "'veracity,' 'reliability' and 'basis of knowledge' are all highly

relevant in determining the value of his report."  Gates, 462 U.S. at 230.  These elements are not

"entirely separate and independent requirements to be rigidly exacted in every case," but rather

"should be understood simply as closely intertwined issues that may usefully illuminate the

commonsense, practical question whether there is 'probable cause' to believe that contraband or

evidence is located in a particular place."  Id.  "[A] deficiency in one may be compensated for, in

determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."[4] Id. at 233. Wholly conclusory assertions of reliability are not entitled to any weight. United States v. Dismuke, 593 F.3d 582, 587 (7th Cir. 2010). In fact, if reliability is asserted as a mere conclusion, information obtained from a reliable source must be treated as information obtained from an informant of *unknown* reliability. See United States v. Koerth, 312 F.3d 862, 867 (7th Cir. 2002). But an informant's unknown reliability is not necessarily fatal to the probable cause determination if, under the totality of the circumstances, a reasonable person might consider that the informant's statements are nevertheless worthy of credence. Koerth, 312 F.3d at 867–68 (citing Gates, 462 U.S. at 238).

When assessing an informant's reliability, credibility, and basis of knowledge, the totality-of-the-circumstances inquiry encompasses several relevant factors, including: (1) the degree of independent police corroboration of the informant's information; (2) the extent to which the information is based on the informant's personal observations; (3) the amount of detail provided by the informant; (4) the interval of time between the events reported by the informant and the warrant application; and (5) whether the informant personally appeared before the warrant-issuing judge to present the affidavit or testimony, thus allowing the judge to evaluate the informant's knowledge, demeanor, and sincerity. Koerth, 312 F.3d at 866.

---

[4] The Gates Court explained further: "If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." Id. at 233–34 (internal citations omitted).

Assessing an informant's credibility can also include consideration of whether he has a history of providing reliable information to the police. See United States v. Sidwell, 440 F.3d 865, 869 (7th Cir. 2006) (noting that the informant's history of providing reliable information to law enforcement in the past was persuasive in determining whether the informant's controlled buy with the defendant established probable cause for the search warrant). The Seventh Circuit has emphasized that "[s]uch history is important in determining whether, or the extent to which, an informant's information is colored by a bias against a defendant." United States v. Searcy, 664 F.3d 1119, 1123 (7th Cir. 2011) (emphasizing that the informant's pattern of providing information to police that led to the arrest of three other individuals indicated that he was not specifically targeting the defendant, and concluding that there was thus less concern about whether the informant was a rival drug dealer, an angry customer, or had some other issue with the defendant).

Whether an informant made a statement against his penal interest is also relevant, as such statements are viewed as carrying at least some indicia of reliability. See United States v. Harris, 403 U.S. 573, 583 (1971) ("Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search."); United States v. Mitten, 592 F.3d 767, 774 (7th Cir. 2010) (stating that statements against penal interest have been viewed as carrying some indicia of reliability); United States v. Mykytiuk, 402 F.3d 773, 776–77 (7th Cir. 2005) (considering an informant's statements against penal interest in the probable cause analysis for a search warrant).

Whether an informant was recently arrested is also relevant to his credibility. See Williamson v. United States, 512 U.S. 594, 607–08 (1994) ("A person arrested in incriminating

12

circumstances has a strong incentive to shift blame or downplay his own role in comparison with that of others, in hopes of receiving a shorter sentence and leniency in exchange for cooperation.");  United States v. Olson, 408 F.3d 366, (7th Cir. 2005) (noting that a newly-arrested informant "merits a greater dose of skepticism when addressing his credibility").

### 2.    The search warrant in Glover's case.

In Glover's case, Fourth Amendment precedents establish that the search warrant for his person and residence was not supported by probable cause.  The affidavit in support of the search warrant provided insufficient information regarding Doe's reliability, veracity, and basis of knowledge.  The affidavit was lacking in the level of detail it provided.  Doe's appearance before the issuing judge did not overcome those deficiencies in the affidavit.  And the officer's corroboration of Doe's statements was also insufficient to account for the deficiencies in the affidavit.  Therefore, under the totality of the circumstances, the search warrant in this case was not supported by probable cause.

### (a)    The affidavit did not provide enough information to establish Doe's reliability.

The affidavit provided insufficient information to establish Doe's reliability.  In fact, Officer Brown's affidavit said absolutely nothing about Doe's reliability.  To begin with, the affidavit did not even indicate whether Doe was an unquestionably honest citizen, see Gates, 462 U.S. at 233–34, or a typical informant.  Ex. A at 1.  According to Officer Brown, he "had the opportunity to speak with *an individual*" whom he referred to as "John/Jane Doe."  Ex. A at 1. Because Doe signed the affidavit as "John Doe," the only assumption about Doe's identity that can be gleaned from the affidavit is that he is male.  Ex. A at 1.

13

And that unnamed, male individual was untested. Officer Brown said absolutely nothing in the affidavit about Doe's reliability. The affidavit gave no information about whether Doe had any history as an informant. It said nothing about whether Doe provided reliable information to Officer Brown or other officers in the past, and if so, whether Doe had been paid for providing information, how long ago he provided reliable information, how many times he provided reliable information, or the nature of the information he provided. Officer Brown did not even include a conclusory statement that he believed Doe was reliable. See Koerth, 312 F.3d at 867 (finding that the affidavit did not support issuance of a search warrant in part because "the affidavit fail[ed] to explain the extent, if any, that [the informant] ha[d] previously provided information leading to arrests or prosecutions for criminal activity of any kind").

Except for Officer Brown's corroboration efforts, his affidavit relied entirely on Doe's statements. The issuing judge's probable cause determination therefore turned on Doe's track record of reliability. Because nothing was included in the affidavit to address that critical point, this factor suggests that the warrant in this case was not supported by probable cause.

### (b) **The affidavit did not establish Doe's veracity**.

The affidavit in support of the search warrant also left out critical information about Doe's veracity. The only indicator of Doe's potential veracity was the fact that the complaint for the search warrant contained Doe's signature and indicated that the information in the complaint was sworn before the issuing judge. Ex. A. at 1–2. But there was no information in the body of the affidavit that went to Doe's credibility.

When a confidential informant is relied upon for the issuance of a search warrant, several considerations are relevant to the informant's credibility, none of which were mentioned by

Officer Brown. For example, the affidavit said nothing about how Doe came in contact with police before providing information about Glover. Was it during the normal course of business as a paid informant in an ongoing investigation? Was it as a concerned citizen who sought out the police to report a crime? Or did Doe come in contact with law enforcement because he was accused of a crime, arrested, and presently in custody? Officer Brown's affidavit answered none of these questions.

The affidavit was also silent about whether Doe had any criminal history and if so, the nature of that criminal history. Officer Brown mentioned nothing about whether Doe had prior arrests or convictions, including arrests or convictions demonstrating a penchant for dishonesty (such as arrests or convictions for fraud, or the use of an alias when confronted by law enforcement).

The affidavit also failed to mention whether Doe had any affiliation with a street gang. If Doe was involved in a gang, information related to his gang affiliation was relevant to his credibility in providing information about Glover. But Officer Brown's affidavit gave no indication as to whether Doe was involved in illegal gang activities generally, whether he was affiliated with the same gang that Glover may have been affiliated with, whether he was affiliated with a rival gang or opposing faction of the same gang, or whether his gang affiliation gave him any motivation to inform against Glover.

Officer Brown also omitted information about how Doe knew Glover, and how well he knew Glover. As noted above, the affidavit was silent as to whether Doe knew Glover from his own or a rival gang. The affidavit said nothing about whether Doe knew Glover through some form of illegal activity, such as drug trafficking. It gave no indication as to whether they were

15

family members, close friends, or casual acquaintances, or for how long. The fact that Doe indicated that he knew Glover only as "T.Y." (Ex. A at 1) suggested something about the relationship between Doe and Glover. But Officer Brown gave the issuing judge no information whatsoever from which to further evaluate that relationship and determine whether that relationship gave Doe any motive to provide information against Glover.

Officer Brown also said nothing about why Doe was at Glover's house on the several occasions he allegedly saw firearms. And he said nothing about whether Doe made incriminating statements regarding his own illegal conduct in the course of pointing the finger at Glover. For example, the affidavit said nothing about whether Doe was at Glover's home to participate in illegal activities related to guns or drugs, a consideration highly relevant to Doe's credibility.

Officer Brown also said nothing about whether Doe made statements against his penal interest related to Glover's other alleged conduct of gang affiliation, running a drug spot, and robbing others as part of a "stick-up crew." For Doe to make such allegations, he would have known about Glover's other alleged activities because he either: (1) participated directly with Glover in those activities, (2) happened to innocently observe those activities in several different places at several different times, or (3) did not observe Glover engaged in those activities but only reported to Officer Brown what he had heard second-hand from others. All three possibilities are highly relevant to determining Doe's credibility, but that information was not provided in the affidavit.

Ultimately, because the issuing judge was not given any information in the affidavit to assess Doe's credibility, this factor weighs against a finding of probable cause to support the

issuance of the search warrant.

**(c)** **Doe's basis of knowledge was not sufficiently set forth in the affidavit**.

Officer Brown's affidavit also provided an insufficient basis for Doe's knowledge about Glover's possession of guns in his home and Glover's other alleged illegal activities.

As for the guns Doe allegedly saw in Glover's home the day before the search warrant was sought and during the previous six weeks, the affidavit was silent as to: (1) how Doe knew Glover was in a class of persons (i.e., convicted felons) not permitted to possess firearms, (2) how Doe obtained his knowledge of firearms such that he could distinguish between semiautomatic handguns and revolvers and discern the caliber of the revolver he allegedly saw, and (3) how Doe knew that the guns he observed were Glover's and not someone else's.

The affidavit also said nothing about how Doe knew about Glover's other alleged illegal activities. Officer Brown provided no information about how Doe knew: (1) that Glover had a dope spot, (2) that heroin was sold at that dope spot, (3) that Glover supplied the dope spot, (4) that Glover oversaw the daily operations of the dope spot, (5) that Glover was affiliated with the Traveler Vice Lords street gang, (6) that Glover was part of a "stick-up crew," (7) that Glover's "stick-up crew" sought out individuals with large amounts of money and/or narcotics to rob, and (8) that Glover kept handguns in his home specifically because of his illegal activities related to drugs and robbing others. Importantly, the affidavit did *not* allege that Glover actually *told Doe* about any of Glover's alleged illegal activities. The affidavit consisted, rather, of Doe's mere assertions about Glover, without any claim that Glover *himself* gave Doe that information. Therefore, there is no way to know from the affidavit whether Doe simply lied altogether, heard

17

the information on the street, or had first-hand knowledge because he actually participated with Glover in drug trafficking, robberies, and/or other gang-related misconduct.

Without a basis for Doe's knowledge regarding the multiple guns he allegedly saw on multiple occasions or the other illegal activities Glover allegedly engaged in, the affidavit fell short of what the Fourth Amendment requires. This factor, therefore, also weighs against a finding of probable cause for the search warrant.

### (d) The affidavit was lacking in adequate detail.

The level of detail provided in the affidavit also suggests that the search warrant in this case was not based on probable cause. First, the affidavit did not indicate that Doe gave any physical description of Glover other than the nickname "T.Y." Ex. A at 1. Doe also did not give any description of Glover's home other than the address. Ex. A at 1. See, e.g., United States v. Peck, 317 F.3d 754, 756 (7th Cir. 2003) (finding the informant's level of detail insufficient when she did not provide any information about the defendant other than that he was a black male).

Second, the affidavit was void of details regarding the circumstances under which Doe allegedly saw firearms in Glover's home the day before seeking the search warrant and during the previous six weeks. For example, the affidavit did not include any detail from Doe regarding: (1) the layout of Glover's home; (2) where specifically in the home Doe saw the firearms (e.g., on what level of the three-level home, in what room or rooms, and whether the firearms were in/on/under furniture or in a closet or in some type of container); (3) how specifically Glover "possessed" the guns (e.g., were they in his hands, his waistband, or stored in his personal space or among his belongings); (4) who else was present during each occasion Doe saw firearms; (5) what Glover said, if anything, about the guns the times Doe saw them; (6) how many times

18

during the previous six weeks Doe saw guns in Glover's residence (i.e., what Doe meant by "many times"); (7) on what specific dates Doe saw guns in Glover's residence during the six previous weeks; (8) the specific types of guns, and how many guns, Doe saw at Glover's home during the previous six weeks; and (9) why Doe was at Glover's home on those several occasions. See, e.g., Peck, 317 F.3d at 756 (finding insufficient detail in the affidavit when the informant failed to say where the drugs were located in the defendant's home, the total amount of drugs, or the frequency with which the defendant sold drugs).

And third, Officer Brown's affidavit provided no detail regarding Doe's allegations of Glover's other illegal activities. The affidavit gave no detail from Doe regarding where Glover's dope spot was located, who else worked at the drug spot, or whether drugs besides heroin may have been sold there. The affidavit was also void of details about the alleged "stick-up crew." It said nothing about who else participated in the "stick-up crew," who prior victims were of the crew's robberies, when and where the alleged robberies took place, or the type and number of guns used to commit the robberies. See, e.g., Junkert v. Massey, 610 F.3d 364, 368–69 (7th Cir. 2010) (finding no probable cause to support the search warrant based, in part, on the confidential source's generalized assertions of the defendant's criminal activities and failure to specify the time periods, places, or other details regarding those criminal activities.

The lack of detail provided in the affidavit in this case adds to the conclusion that the search warrant was not supported by probable cause.

### (e)  Doe's appearance before the issuing judge did not overcome the deficiencies in the affidavit.

Doe's appearance before the issuing judge was not sufficient to remedy the deficiencies in

Officer Brown's affidavit. In <u>United States v. Lloyd</u>, 71 F.3d 1256, 1263 (7th Cir. 1995), the Seventh Circuit explained that an informant's presence before the issuing judge adds to the reliability of the information used to obtain the warrant because it gives the judge an opportunity to assess the informant's credibility and allay any concerns he might have about the veracity of the informant's statements. However, deficiencies in an affidavit seeking a search warrant cannot be overcome by an informant's mere appearance before the issuing judge if the informant merely takes an oath stating that his statements are true, and does not give testimony or submit to meaningful questioning by the issuing judge. <u>See</u> Peck, 317 F.3d at 757 (finding that the informant's oath before the issuing judge, without testimony, was not sufficient to overcome the deficiencies in the warrant application).

In this case, there is no evidence that the issuing judge actually questioned Doe to assess his reliability, veracity, and basis of knowledge. Because there was no information in the affidavit about Doe, there was nothing to signal the issuing judge that further inquiry into Doe's credibility was essential to a proper assessment of probable cause. Without any information about Doe in the affidavit, the issuing judge was not in a position to know what further inquiry was necessary to adequately gauge Doe's credibility.

Accordingly, Doe's appearance before the issuing judge in this case does not overcome the deficiencies in the affidavit.

**(f)**      **<u>The officer's efforts to corroborate of Doe's statements did not make up for the deficiencies in the affidavit</u>.**

The officer's corroboration of Doe's statements also failed to save the warrant in this case. When an informant of unknown reliability is relied upon in the probable cause

20

determination, the extent to which the police corroborate the informant's information is key.

Dismuke, 593 F.3d at 587.  But the corroboration here was insufficient.

Doe described the person he claimed to be in possession of firearms as "T.Y." and gave no other descriptive information.  Doe then confirmed the identity of "T.Y." when he was shown a single photograph of Glover.  He did not pick Glover out of a less suggestive photo array.  Doe also provided an address where Glover lived, but gave no additional descriptive information about the residence itself.  Doe confirmed that "T.Y." lived at that address when Doe drove by the residence with Officer Brown.  Therefore, as for Glover's identity and address, the officer's corroboration consisted of nothing more than Doe confirming his *own story*.  See Gates, 462 U.S. at 244–45 (emphasizing that when assessing probable cause, it is enough that "corroboration through *other* sources of information reduced the chances of a reckless or prevaricating tale") (emphasis added).

Anyone living in Glover's neighborhood could have identified Glover as a person who lived at that address.  The corroboration of the innocent facts of Glover's identity and address simply did not give rise to a strong degree of suspicion that Glover presently had guns inside his home.  See Dismuke, 593 F.3d at 587–88 (explaining that accuracy on innocent facts such as identity and address "is important but does not directly bolster the informant's claim that [the defendant] illegally possessed guns at his home").

Without relying on what Doe said, Officer Brown's only truly *independent* corroboration of Doe's story was his check of Glover's criminal history.  Even so, the confirmation that Glover had prior felony convictions did not, alone, establish whether Glover presently had guns in his home.  See Peck, 317 F.3d at 757 (explaining that a criminal history check alone does not

21

corroborate an informant's statements alleging that a search will uncover evidence of a crime).

And no other independent corroboration was attempted. Officer Brown did not conduct surveillance. He did not record telephone calls between Doe and Glover. He did not set up a controlled buy. He did not send Doe to Glover's residence with an audio or video recording device. He did not interview other potential eyewitnesses to Glover's activities. Officer Brown also failed to conduct corroboration related to Doe. He did not check Doe's criminal history or confirm Doe's ability to identify different types of firearms.

On balance, therefore, the corroboration of Glover's identity and address through Doe, and the independent corroboration of Glover's criminal history was not enough to overcome the other deficiencies in the application for the search warrant.

> **(g)** **Under the totality of the circumstances, the issuing judge did not have a substantial basis for determining the existence of probable cause to issue the warrant**.

In view of the totality of the circumstances in this case, the issuing judge lacked a substantial basis for the existence of probable cause and thus issued the search warrant in violation of the Fourth Amendment. See Gates, 462 U.S. at 238–39.

The affidavit in Glover's case is more problematic than the affidavit in Dismuke, 593 F.3d at 588, where the affidavit requesting a search of the defendant's home was "sufficient, albeit just barely," to support issuance of the warrant. In Dismuke, The affidavit relied primarily on information the officer had received from an informant. Id. at 585. According to the affidavit, the officer was contacted by a confidential informant who reported that within the last week, he had been at the defendant's home at a specific address. Id. The informant claimed to have seen the defendant, a convicted felon, in possession of a shotgun and two handguns inside

the home.  Id.  The officer asserted in the affidavit that the informant was "reliable," though he

gave no other information about the informant.  Id.  To corroborate the informant's story, the

officer asked the informant to identify the defendant in a photograph, which he did.  Id.  The

officer also verified that the informant was able to distinguish between different types of

firearms.  Id.  The officer consulted court records and confirmed that the defendant was a

convicted felon.  Id.  The officer confirmed the defendant's home address in the driver's licence

database.  Id.  The officer also went to the defendant's home and confirmed that a car parked

behind the house was registered to the defendant.  Id.

Considering the sufficiency of the search warrant, the Seventh Circuit concluded, "We

see this as a close case."  Id. at 587.  In favor of probable cause, the court noted that the

information in the affidavit provided "at least *some* indicia of reliability" because the informant

had personally and recently seen specific guns at a specific address, and the information provided

was also "marginally more reliable" because the officer confirmed the informant's knowledge of

firearms.  Id. (italics in original).  The court also noted that even though the informant was not

identified or brought before the magistrate for live testimony, he did subject himself to

prosecution for making false statements to law enforcement.  Id. at 588.

The court, however, expressed the concern that the level of detail and corroboration were

"not well-developed" because, for example, there was no explanation about how the informant

knew the defendant, why he was with the defendant in his home, or where specifically the guns

were in the house.  Id. at 587.  The court added that confirming the accuracy of "innocent facts"

such as the defendant's identity and address was "important but does not directly bolster the

informant's claim that [the defendant] possessed guns at his home."  Id. at 588.  But after

considering the facts as a whole, the court concluded that the affidavit was "just barely" sufficient to support the issuance of the warrant.  Id.

The affidavit in Glover's case had more deficiencies than the affidavit in Dismuke and thus fell short of being "just barely" sufficient.  Unlike the affidavit in Dismuke, Officer Brown's affidavit did not indicate whether Doe contacted him first, whether they came in contact because Doe was arrested, or whether they came in contact some other way.  And while the officer in Dismuke made a bare assertion without supporting information that the informant was "reliable," Officer Brown made no assertion whatsoever of Doe's reliability and gave no information at all that would be relevant to Doe's reliability.  In addition, unlike in Dismuke, Officer Brown did not verify Doe's ability to distinguish between different types of firearms.  On balance, therefore, if the affidavit in Dismuke was "just barely" sufficient, the affidavit in Glover's case with even more deficiencies fell short of what the Fourth Amendment requires.

In fact, the affidavit in Glover's case is comparable to affidavits in several cases in which the Seventh Circuit found insufficient justification to issue a search warrant.  For example, in Peck, 317 F.3d at 755, the informant told police that she had personally observed drugs in Peck's home less than two days before the search warrant was executed, and subsequently appeared before the issuing judge to take an oath that her statements were truthful.  However, that was not enough to overcome the minimal detail provided in the affidavit and lack of sufficient corroboration.[5] Id. at 756–57.  The Seventh Circuit found problematic the fact that the informant did not explain important details such as where specifically the drugs were in Peck's house, the

---

[5]  But the Peck court ultimately found that the evidence was admissible based on the good faith exception to the exclusionary rule.  317 F.3d at 757–58.

total amount of drugs Peck possessed, or how often Peck sold drugs.  Id. at 756.  Also concerning

was the fact that the informant did not provide any other identifying information other than that

Peck was a black male, even though she claimed to be his girlfriend.  Id.  And the informant did

not explain how she knew the substances she saw were illicit drugs based on her "personal

experiences."  Id. at 756–57.  The court also emphasized the fact that the police's efforts to

corroborate the informant's story consisted only of checking Peck's criminal history.  Id. at 757.

The affidavit in Glover's case was similarly devoid of critical detail.  As in Peck, the

affidavit in this case did not include even the most basic details about Doe's alleged observation

of guns in Glover's home or about Glover's other alleged criminal activities.  The informant in

this case also failed to provide a more detailed description of Glover and his residence and gave

no basis for his knowledge of firearms, all defects similar to those found in Peck.  And while the

officer in Glover's case made a few more efforts to corroborate Doe's story than the officer in

Peck, the corroboration of Glover's identity and residence was accomplished by Doe simply

confirming his own story.

Glover's case is also similar to United States v. Bell, 585 F.3d 1045, 1048 (7th Cir.

2009), where the Seventh Circuit also found that the search warrant was not supported by

probable cause.[6]  The affidavit in Bell contained the statement of an informant who alleged he

had "just left" Bell's home, where he saw crack cocaine of an unspecified quantity in two plastic

bags and a large sum of cash on a table in the living room.  Bell, 585 F.3d at 1048.  The

informant said he had seen crack cocaine before and knew what it looked like.  Id.  The

---

[6]  However, the court ultimately found that the good faith exception to the exclusionary rule
applied.  Bell, 585 F.3d at 1053–54.

25

informant added that he had seen crack cocaine and a handgun under the couch at Bell's home on previous occasions, and said that Bell had threatened to harm others with the gun and had loaned the gun to others to threaten people.  Id.  The informant described the location of Bell's home. Id.  An officer checked Bell's criminal history and confirmed that Bell had prior arrests and convictions for weapons and drug offenses.  Id.  The affidavit also indicated that during previous investigations, Bell had been identified as being involved in crack cocaine distribution by several arrested individuals and confidential sources.  Id.  The informant did not appear before the issuing judge.  Id. at 1050.

The Seventh Circuit found that, based on the totality of the circumstances, the issuing judge did not have a substantial basis for finding that the affidavit established probable cause.  Id. at 1051–52.  The court found that the affidavit was void of information that would establish the informant's reliability.  Id. at 1050.  It said nothing about whether the informant had provided information to law enforcement previously.  Id. It said nothing of the informant's relationship with Bell, such as how they knew each other and what the informant was doing at Bell's residence.  Id.  The court emphasized that the informant "could have been a rival drug dealer, an angry customer, or had some other beef with Bell," which was relevant to the reliability of his statements.  Id.

The court also concluded that "[t]he amount of detail in the affidavit . . . [left] much to be desired" because it did not specify the quantity of crack cocaine in Bell's apartment.  Id.  The affidavit also did not indicate how the informant specifically knew he was seeing crack cocaine, but rather relied on a mere "conclusory explanation" that the informant knew what crack looked like.  Id.  As for the gun, no detail was provided regarding when the informant had last seen it or

when Bell allegedly used it to threaten others.  Id.  Such statements did not "provide the factual

foundation necessary to establish probable cause."  Id.  The court also explained that the

statements from the other unnamed informants were void of critical details and thus could not

assist in answering the questions about the informant's reliability.  Id. at 1050–51.

The affidavit in Glover's case contains the deficiencies found in Bell and more.  In

addition to providing no information about reliability, as was the case in Bell, the affidavit in this

case did not even identify Doe as either an unquestionably honest citizen or someone else.  It said

nothing at all about his reliability.  Also as in Bell, the affidavit in this case was lacking in critical

details about Doe's alleged recent observations inside Glover's home, Glover's other alleged

illegal activities, Doe's relationship with Glover, or any other details that would tend to provide

the necessary factual foundation for his story.  And while Doe appeared before the issuing judge,

unlike the informant in Bell, his presence could not have cured the defects in the affidavit when

no information was provided there to alert the judge to inquire further into Doe's credibility and

reliability.

Glover's case is also comparable to Koerth, 312 F.3d at 867–68.  In Koerth, the affidavit

in support of a search warrant was found to lack sufficient facts to support issuance of the

warrant.[7]  Id. at 867–68.  In the affidavit, the officer provided the name of an informant, said that

he was "believed to be a reliable source," and stated that drugs recently found in the informant's

possession were purchased from Koerth.  Id. at 867.  The informant claimed to have been at the

defendant's home recently, where he saw specified quantities of marijuana, methamphetamine,

---

[7]  However, the court ultimately held that the officers executing the search warrant relied in good
faith on the magistrate's decision to issue the warrant.  Koerth, 312 F.3d at 869–70.

and cocaine and $30,000 in cash.  Id.  The informant also said that he had purchased drugs from Koerth in the past, had seen numerous firearms in Koerth's home in the past, knew that Koerth was part of a motorcycle club, and believed that Koerth would not be afraid to shoot if encountered by law enforcement.  Id.

The Seventh Circuit concluded that the affidavit presented "little more than mere conclusions and assertions of wrongdoing on the part of the defendant, without an adequate factual foundation, based on the testimony of a previously unknown informant."  Id. at 867.  The court emphasized that the affidavit did not explain whether the informant had provided reliable information in the past, and provided no other information tending to establish the informant's reliability.  Id. at 867–68.  The court also noted that the informant was not presented to the magistrate judge in spite of the fact that he was in custody at the time.  Id. at 868.  And the officer gave no information about what steps, if any, had been taken to corroborate the informant's story.  Id.

The affidavit in Glover's case was likewise devoid of critical information.  The affidavit in Koerth provided very little detail about the informant's alleged observation of drugs in the defendant's home and the defendant's alleged other activities, like the affidavit in this case.  In addition, the affidavit in Koerth, while deemed insufficient with respect to information on the informant's reliability, actually contained *more* information relevant to the untested informant's reliability than in Glover's affidavit.  For example, in Koerth, the affidavit at least provided the informant's name and the officer's bare assertion that the informant was reliable.  The affidavit in Koerth also established that the informant had made a statement against his penal interest in providing the source of drugs he had purchased.  See Mitten, 592 F.3d at 774 (noting that

28

statements against penal interest have been viewed as carrying some indicia of reliability). And

if that information was insufficient in Koerth, Glover's affidavit with none of that information

was also necessarily insufficient. The affidavit in Glover's case similarly contained allegations

from an untested informant that lacked an adequate factual foundation. And while the officer in

Glover's case attempted to corroborate Doe's story, unlike the officer in Koerth, that

corroboration did not make up for the other significant deficiencies in the affidavit.

      In addition to sharing key similarities with the deficient affidavits in Peck, Bell, and

Koerth, the affidavit in Glover's case is similar to the affidavit that the Honorable Ruben Castillo

recently deemed insufficient in United States v. Simmons, 771 F. Supp. 2d 908 (N.D. Ill. Mar.

22, 2011) (mem.), which case is attached here as Exhibit F. In Simmons, an officer from the

Chicago Police Department and a confidential informant ("CI") appeared before Judge David A.

Skryd (the same issuing judge involved in Glover's case, see Ex. B, Ex. C) to swear out the

complaint for a warrant to search Simmons's home for firearms. 771 F. Supp. 2d at 914.

Sources of information beyond the officer's complaint reflected that the CI had been arrested for

solicitation of unlawful business related to drug trafficking the day before the search warrant was

sought. Id. at 912. When the CI was taken into custody and led to believe that he would be

charged with possession of drugs, he provided information against Simmons in an effort to help

himself. Id. at 912–13. When the officer ran the CI's criminal history in preparing the

complaint, it was discovered that the CI had multiple arrests and convictions, including

convictions for gun and drug offenses, was affiliated with a gang, and had used aliases in

connection with prior arrests. Id. at 913.

      After the CI claimed that Simmons was in possession of firearms in his residence, the

officer prepared a complaint seeking issuance of a search warrant. Id. at 914. The complaint, which was signed by the officer and the CI, stated that the officer "had a conversation with a subject that will now be referred to as J. Doe." Id. The complaint provided the following information:

> On this date,[8] J. Doe related that as recently as 10 Jan 10, J. Doe went to 604 N. Trumbull 1st floor apartment of a brick two flat building to visit with Verdell Simmons. J. Doe is an acquaintance of Verdell Simmons. J. Doe related to R.O. that during this visit [with] Verdell Simmons he observed Verdell Simmons reach beneath a couch in the front room of the apartment, retrieve a blue steel semi-automatic handgun and place the weapon in his waistband. J. Doe stated that he knew the handgun was real because he is familiar with handguns and has handled handguns in the past. J. Doe further related to R.O. that Verdell Simmons told J. Doe that he is at war with traveling vice lords from Chicago and Trumbull and he has the weapon with him in case the travelers come to his house and start a war.

Id. The complaint also outlined the officer's efforts to corroborate the CI's story, which consisted of: (1) the CI positively identifying Simmons's residence by looking at a photograph of it and by driving by the residence with the officer; (2) the CI positively identifying Simmons in photographs; and (3) running Simmons's criminal history, which revealed a conviction for a felony. Id. The record reflected that when the officer and the CI appeared before the issuing judge, the CI was asked very few, if any, questions. Id. The issuing judge did not inquire into the CI's criminal history, gang affiliation, circumstances that led him to provide information to the police, or whether the CI had previously provided reliable information as an informant. Id. at 915.

Simmons claimed that the warrant was invalid because the officer's complaint omitted material facts that diminished the CI's credibility. Id. at 915. Judge Castillo therefore applied

---

[8] January 13, 2010. See Simmons, 771 F. Supp. 2d at 914.

the analysis for false statements in an affidavit under Franks v. Delaware, 438 U.S. 154, 164–65 (1978), to omitted statements, which is a two-part inquiry: (1) whether an omission in a complaint for a search warrant amounts to a deliberate falsehood or reckless disregard for the truth, and (2) whether the contents of the complaint—with the addition of the omitted material facts—would be sufficient to establish probable cause. Simmons, 771 F. Supp. 2d at 916 (citing United States v. Robinson, 546 F.3d 884, 888 (7th Cir. 2008)). As for the first prong of the analysis, Judge Castillo found that the officer demonstrated reckless disregard for the truth in omitting from the complaint information material to the probable cause determination, namely, the CI's untested reliability, criminal background, gang affiliation, and recent arrest, so as to eliminate nearly every indicator that detracted from the CI's reliability and credibility. Simmons, 771 F. Supp. 2d at 917–21.

Judge Castillo then considered the probable cause prong of the analysis and concluded that had the omitted facts about the CI been included in the complaint, probable cause would not have been established. Id. at 921. The court emphasized six significant problems with the CI's statement: (1) the CI was a first-time, untested informant; (2) the CI was unnamed and unknown; (3) the post-arrest context in which the CI gave information suggested a motive to curry favor; (4) the CI's prior arrests, convictions, and use of aliases suggested he would not be a reliable source; (5) the CI's statement lacked specific details such as how the CI knew Simmons or why he was at Simmons's home; and (6) the CI did not make a statement against his penal interest in providing information against Simmons. Id. at 922–24.

With respect to corroboration, Judge Castillo determined that the officer's efforts to corroborate the CI's story were insufficient to verify what he said and thus did not make up for

the other deficiencies in the complaint. Id. at 924–25. The court identified four problems with the attempted corroboration: (1) nearly all the corroboration involved the CI—who was not an independent source—verifying information given to him by the police; (2) the officer relied on the CI's confirmation of the information the CI himself provided; (3) suggestive identification procedures were employed for the CI's confirmation of Simmons's identity and residence; and (4) the officer's other efforts only corroborated the innocent facts of Simmons's identity and residence. Id. The court explained that without relying on what the CI said, the only evidence before the issuing judge was that Simmons had a prior conviction. Id. at 926. Thus the court concluded that under the totality of the circumstances, the efforts to corroborate the CI's story were not enough to establish probable cause. Id. at 925.

Judge Castillo also concluded that the CI's appearance before the issuing judge could not have allayed any concerns the issuing judge may have had. Id. at 925. The court explained that because the complaint omitted information about the CI being a first-time informant, the CI's criminal history, the CI's gang affiliation, and the CI's arrest the day before, the judge "had no reason to 'allay' any concerns by questioning the CI." Id. The court also emphasized that there was no evidence that the issuing judge actually asked the CI any questions about the CI's background, his record of providing information to the police, or the context in which he provided information about Simmons. Id.

Based on all this, Judge Castillo found that "there was insufficient evidence to suggest a probability that Simmons possessed a gun at the Trumbull residence, or even that Simmons resided at the address given by the CI." Id. at 926. The court concluded that the warrant for the search of Simmons and his residence was not supported by probable cause. Id. The court also

found that the good faith exception to the exclusionary rule did not apply because the officer's omissions from the complaint were dishonest or in reckless disregard for the truth. Id. at 927. Accordingly, Simmons's motion to suppress was granted. Id.

The similarities between Glover's case and Simmons demonstrate that the complaint in Glover's case was likewise deficient. As in Simmons, Doe in this case was also an unnamed, untested, first-time informant who made no statement against his penal interest in providing information to law enforcement.

And nothing at all was said in the affidavit about whether Doe was an unquestionably honest citizen as opposed to someone like the CI in Simmons: a gang member with a criminal past who may have had a motive to lie. While the omission of that information in the Simmons complaint was particularly damaging to the probable cause analysis because of what *was* known about the CI, what was *not* known about Doe from the affidavit in this case was equally as damaging. Without any information one way or the other as to who Doe was, his background, and the circumstances in which he provided information, the issuing judge was not put on notice as to what specific inquiry into Doe's reliability and credibility would be necessary to allay potential concerns and properly assess probable cause. Therefore, as was the case in Simmons, Doe's appearance before the issuing judge simply could not cure the significant deficiencies in the affidavit, especially when there is no evidence in Glover's case that the issuing judge asked Doe any questions.

As for the level of detail provided, Doe gave even fewer details in his statement than the CI in Simmons. Doe, for example, did not say how he knew Glover, whereas the CI in Simmons said Simmons was an acquaintance of his. Doe did not specify the room where he allegedly saw

33

Glover with guns or specify in what manner Glover possessed them, while the CI in <u>Simmons</u>

provided details about seeing Simmons produce a gun from beneath a couch in the front room of

his home and place the gun in his waistband. Doe was also silent about how he had knowledge

to recognize the type and caliber of guns he saw, while the CI in <u>Simmons</u> claimed familiarity

with guns from having previously handled them. And while the CI in <u>Simmons</u> said that

Simmons told him why he had a gun, Doe made claims about Glover's possession of guns and

his other activities without ever saying that Glover personally gave him that information.

The officer's corroboration in Glover's case was also insufficient to make up for the other

deficiencies in the affidavit. As was the case in Simmons, Doe was involved in nearly all the

corroboration, in spite of the fact that he was not an independent source. As in Simmons, Doe

simply confirmed his own story in identifying Glover from a photograph and identifying

Glover's residence through the use of suggestive identification procedures. And, as was the case

in Simmons, other than the confirmation of the innocent facts of Glover's identity and residence,

the only corroboration that came from a source other than Doe was the officer's criminal history

check. But the officer in <u>Simmons</u> took one additional step to corroborate the CI's story: he

confirmed the CI's knowledge of guns. In Glover's case, however, Doe's knowledge of firearms

was not confirmed, such that there were even fewer corroboration efforts in Glover's case.

Ultimately, the affidavit in Glover's case failed to establish probable cause for issuance of

the search warrant. In Gates, the Supreme Court reaffirmed that bare bones affidavits are

inadequate: "sufficient information must be presented to the magistrate to allow that official to

determine probable cause; his action cannot be a mere ratification of the bare conclusions of

others." 462 U.S. at 239. But Judge Skryd's issuance of the search warrant in this case was a

mere ratification of the barest of conclusions. Officer Brown's affidavit did rely on Doe's firsthand observations and the warrant was sought shortly after his alleged observations. But the dearth of information in the affidavit regarding Doe's reliability, veracity, basis of knowledge, and details regarding the allegations against Glover simply could not be compensated for by Officer Brown's minimal corroboration and Doe's appearance before the issuing judge without any apparent questioning. Therefore, under the totality of these circumstances, the affidavit in this case fell short of what the Fourth Amendment requires and probable cause was not established.

### B. The good faith exception to the exclusionary rule does not apply here.

The evidence obtained from the execution of the search warrant of Glover and his residence should not be saved from suppression under the good faith exception to the exclusionary rule because the good faith exception does not apply in this case.

In United States v. Leon, 468 U.S. 897, 920–24 (1984), the Supreme Court established that if a facially valid search warrant is declared invalid after its execution, any evidence seized pursuant to the warrant should nevertheless not be suppressed if the officers who executed the warrant relied in good faith on the issuing judge's finding of probable cause. If a defendant is successful in establishing the invalidity of the warrant, the burden shifts to the government to establish that the police relied in good faith on the issuing judge's decision to issue the warrant based on the affidavit. Koerth, 312 F.3d at 868 (citing Leon, 468 U.S. at 924). An officer's decision to obtain a search warrant is prima facie evidence that he or she was acting in good faith. Leon, 468 U.S. at 921 n.21.

However, a defendant can rebut the presumption of good faith by showing that either: (1)

35

the issuing judge abandoned his or her detached and neutral role and merely served as a rubber stamp for the police, (2) the officers were dishonest or reckless in preparing the affidavit, or (3) the affidavit was so lacking in probable cause that no officer could have reasonably relied on it. United States v. Garcia, 528 F.3d 481, 487 (7th Cir. 2008) (citing Leon, 468 U.S. at 923).

As for the third possible ground for rebutting good faith, when there is a genuine dispute about whether an officer could have reasonably relied in good faith on the issuing judge's decision to issue the warrant, reviewing courts are encouraged to first consider a threshold question: Did the affidavit provide the issuing judge with a substantial basis to rule that there was probable cause?  Koerth, 312 F.3d at 866 (citing Gates, 462 U.S. at 238).  If the answer is yes, then the officer's actions were reasonable.  Koerth, 312 F.3d at 866.  But if the answer is no, a second question should then be asked: Could the officer have *reasonably believed* that the facts set forth in the affidavit were sufficient to support a finding of probable cause?  Id. (citing Leon, 468 U.S. at 920–24) (italics in original).  An officer's reliance on the issuing judge's probable cause determination "must be objectively reasonable."  Leon, 468 U.S. at 922.

In addition to the three good faith exceptions above, the Seventh Circuit has emphasized a fourth way for a defendant to rebut the presumption of good faith.  Police officers are "charged with a knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles."  Koerth, 312 F.3d at 869.  And police officers are charged with the corresponding "responsibility to learn and follow applicable legal precedent." United States v. Mykytiuk, 402 F.3d 773, 777–78 (7th Cir. 2005).  It therefore follows that "where courts have held that materially similar affidavits lacked probable cause and the facts are materially indistinguishable from those of the present case, the executing officers could not have

36

reasonably believed the warrant was valid and the good faith exception does not apply." Koerth, 312 F.3d at 869.

In this case, Glover does not have any direct evidence that Judge Skryd abandoned his detached and neutral role and merely served as a rubber stamp for the police. Glover can, however, rebut the presumption of good faith under Leon based on any of the other three established means.

### 1. The affidavit was so lacking in probable cause that no officer could have reasonably relied on it.

First, Officer Brown's affidavit was so lacking in probable cause that no officer could have reasonably relied on it. The affidavit did not provide the issuing judge with a substantial basis to rule that there was probable cause to search Glover's person and his home. As set forth in sections II.A.2(a)–(g) above, the affidavit was void of critical information relevant to Doe's reliability and veracity. The affidavit did not set forth Doe's basis of knowledge related to the firearms he allegedly saw in Glover's home or with respect to Glover's other alleged illegal activities. The affidavit was void of even the most basic details regarding what Doe allegedly observed in Glover's home and what he knew about Glover generally. The affidavit said nothing to suggest that Doe's appearance before the issuing judge permitted the judge to engage in meaningful inquiry into Doe's reliability, veracity, and basis of knowledge. And Officer Brown's criminal history check and corroboration of innocent facts by having Doe confirm his own story was not sufficient to cure the other defects in the affidavit. Under the totality of the circumstances analysis established in Gates, 462 U.S. at 238, the sum total of these deficiencies in the affidavit caused it to fall short of probable cause.

37

Having established that the affidavit did not provide the issuing judge with a substantial basis for finding probable cause, the question then becomes whether Officer Brown could have *reasonably* believed, by an objective standard, that the facts set forth in the affidavit were sufficient to support a finding of probable cause. The answer in this case is no. Officer Brown sought a search warrant based on information obtained from a confidential informant and therefore must have known that the affidavit would require at least some information to establish the informant's reliability, veracity, and/or basis of knowledge, or that substantial corroboration would be required to make up for a lack of such information about the informant. But the affidavit fell short both in information regarding Doe and in the level of corroboration. Officer Brown simply could not have reasonably believed that probable cause could be established on the basis of Doe's statements when the affidavit provided no information whatsoever about Doe's reliability or veracity, almost no information about Doe's basis of knowledge, almost no detail about Doe's alleged encounters with Glover, and only minimal corroboration of Doe's story. See, e.g., United States v. Wilhelm, 80 F.3d 116, 121 (4th Cir. 1996) (holding that the good faith exception under Leon did not apply because the officer submitted a "bare bones affidavit" to the issuing judge and failed to provide any meaningful corroboration). Thus, the affidavit was so plainly deficient that any reasonably well-trained officer would have known that it failed to establish probable cause and that he should not have applied for the warrant. See Koerth, 312 F.3d at 869.

### 2. Materially similar affidavits have been found to lack probable cause to support a search warrant.

Glover can also rebut the presumption of good faith under Leon on the basis that

affidavits materially similar to the affidavit in Glover's case, in cases with similar facts, have been found to lack probable cause. Before Officer Brown sought the search warrant in this case, the Seventh Circuit had already decided Peck, 317 F.3d at 755; Bell, 585 F.3d at 1048; and Koerth, 312 F.3d at 864. As set forth above in section II.A.2.(g), the affidavit in Glover's case is very similar to the affidavits and the factual circumstances in Peck, Bell, and Koerth. See section II.A.2(g), supra, at 24–29. Officer Brown and the other officers who executed the search warrant of Glover and his residence were thus on notice of those cases and charged with the responsibility of learning and following that applicable legal precedent. And that precedent strongly suggested that Officer Brown's affidavit lacked a substantial basis for the issuing judge to determine probable cause. Therefore, because the officers in this case could not have reasonably believed that the warrant was valid, the good faith exception to the exclusionary rule does not apply.

### 3. The deficiencies in the affidavit are strongly suggestive of reckless omissions under *Franks*.

In addition to the two means mentioned above for rebutting the presumption of good faith under Leon, there is also a third basis in this case for establishing that the good faith exception does not apply: recklessness in preparing the affidavit.

Although the validity of a warrant and the validity of the information offered to support it is presumed, this presumption is based on the assumption that when the Fourth Amendment demands a factual showing sufficient to establish probable cause, there will be a *truthful* showing of probable cause. Franks, 438 U.S. at 164–65. Accordingly, the presumption may give way where the defendant establishes by a preponderance of the evidence that the affidavit contained a

39

false statement that was included either intentionally or with reckless disregard for the truth, and that false statement was necessary to the judicial officer's finding of probable cause. Id. at 155–56.

The presumption may also be overcome by evidence showing that the officer intentionally or recklessly *withheld* material facts from the issuing judge. See Whitlock v. Brown, 596 F.3d 406, 410–11 (7th Cir. 2010). In the case of omissions, for a defendant to prove reckless disregard for the truth, the defendant must offer either direct evidence of the affiant's state of mind or *inferential evidence* that the affiant had obvious reasons for omitting facts. See United States v. McNeese, 901 F.2d 585, 594 (7th Cir. 1990), overruled on other grounds by United States v. Westmoreland, 240 F.3d 618, 632–33 (7th Cir. 2001). For example, recklessness can be inferred where the omitted information was clearly critical to the probable cause determination. Rivera v. United States, 928 F.2d 592, 604 (2d Cir. 1991). Similarly, if an officer withholds a fact that any reasonable person would have known the judge would want to know, then the officer has acted with reckless disregard for the truth. Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000).

As for materiality, "[t]he materiality of an omitted or misrepresented fact depends on its relative importance to the evaluation of probable cause; an omitted fact is material if its inclusion would have negated probable cause." Whitlock, 596 F.3d at 411. So a court must ask whether a hypothetical affidavit that *includes* the omitted information would still establish probable cause. See United States v. Robinson, 546 F.3d 884, 888 (7th Cir. 2008).

In this case, there is no *direct* evidence that Officer Brown intended to mislead Judge Skryd in leaving information out of the affidavit. However, there is a strong *inference* that

40

Officer Brown's omissions of information from the affidavit were in reckless disregard for the truth and that the omitted information would have been critical to the probable cause determination.

As set forth previously, Officer Brown's affidavit omitted information about Doe's reliability. He did not say whether Doe had formerly been found to be reliable or whether he was a first-time, untested informant. He also failed to mention whether Doe was an unquestionably honest citizen or a regular government informant.

Officer Brown also failed to include important information bearing on Doe's credibility, such as how Doe came into contact with police in order to provide information about Glover, whether he had a criminal background, whether he was a gang member, how he knew Glover, whether he had motive to provide information against Glover, why he had been at Glover's home, and whether Doe made any statements against his own interests in providing information about Glover.

Officer Brown also provided no basis for Doe's knowledge of guns, or his basis of knowledge regarding Glover's other alleged activities. And he included almost no details about what Doe allegedly experienced inside Glover's home the day before and during the prior six weeks, and what he allegedly knew about Glover's other activities.

There are three possible explanations for why all this information was not included in Officer Brown's affidavit. One possibility is that Officer Brown simply did not have the information he left out of the affidavit (because, for example, he did not investigate further to obtain it in the first place). A second possibility is that Officer Brown did, in fact, have information that he did not include in the affidavit, and that information would have weighed

41

*against* a probable cause finding. And a third possibility is that Officer Brown did, in fact, have information that he did not include in the affidavit, and that information would have weighed *in favor* of a finding of probable cause. Consideration of all three possibilities raises the inference that Officer Brown did not act in good faith in preparing the affidavit.

As for the first possibility, it cannot be said that Officer Brown did not have *any* of the information he left out of the affidavit. Officer Brown *must* have known *at least* the following pieces of information, which were not included in the affidavit: (1) how Doe first came in contact with Officer Brown in order to provide information about Glover (i.e., whether he had been arrested, met with Officer Brown in the course of Doe's regular work as a confidential informant, or simply approached Officer Brown as a concerned citizen), (2) whether Doe was in custody and facing charges for illegal activity when he provided information about Glover, (3) whether Doe had established his reliability as an informant in the past, and (4) whether Doe incriminated himself in the course of providing information about Glover. Officer Brown was expected to know from Fourth Amendment precedents that these facts would be essential for the issuing judge to conduct a proper probable cause analysis. But Officer Brown did not disclose any of this information in the affidavit.

Aside from the information mentioned above, it is possible that Officer Brown did not have some other information. For example, it is possible that he did not have information regarding Doe's criminal history, Doe's gang affiliation (if any), Doe's use of any aliases in encounters with law enforcement, Doe's relationship with Glover, the basis for Doe's knowledge about Glover, and details regarding Doe's alleged experiences with Glover. But if Officer Brown did not initially have this information, a quick debriefing of Doe and a check of Doe's

42

background could have provided that information in a matter of minutes. And all of that information would also have been very relevant to the probable cause analysis. Accordingly, Officer Brown's failure to gather such information would raise a strong inference of a reckless disregard for the truth in preparing the affidavit in this case.

The second possibility also raises an inference of a reckless disregard for the truth. For if Officer Brown *did* possess the information he kept out of the affidavit, and that information would have weighed *against* a finding of probable cause, that would raise an inference that he kept the information out of the affidavit for the purpose of misleading the issuing judge in his probable cause determination. See, e.g., Simmons, 771 F. Supp. 2d at 917 (drawing the inference that the officer had "obvious reasons" for omitting relevant information in the affidavit when it was critical to the probable cause determination). If this option is the case, it suggests at the very least an omission made in reckless disregard for the truth because the officer had to know that the issuing judge simply could not perform his detached, neutral role without knowing the full story about the person upon whose story the warrant would rely.

The third possibility, which is that Officer Brown had information that was *favorable* to a probable cause determination, but nevertheless did not include it, simply goes against common sense. Police deal every day in probable cause analyses. Their goal in seeking a search warrant is always to establish probable cause so they can move forward with an investigation by means of an authorized search. So it only makes sense that an officer would include as much probable cause-supporting information as possible in his affidavit. It follows that if Doe in this case had, for example, been proven reliable in the past, or was an unquestionably honest citizen with no criminal history, or had no gang affiliation, or showed reliability in his statement by making a

statement against his own penal interests, a reasonable officer would most certainly have included that information in the affidavit.

If the first option is the case here, a strong inference of a reckless disregard for the truth is raised because information we know the officer must have had was not included in the affidavit. And if the second option is the case here, an even stronger inference of a reckless disregard for the truth is raised because the officer would have kept information out of the affidavit that he knew cut against probable cause. And the third option of possessing favorable information but nevertheless *not* including it in the affidavit is simply too unlikely to consider given an officer's aim in establishing probable cause when seeking a search warrant in the first place.

Therefore, the facts of this case raise a strong inference of omissions made in reckless disregard for the truth. The information that Officer Brown must have had and could have easily obtained if he didn't have it already was information that any reasonable person would have known the judge would want to know. See Wilson, 212 F.3d at 788. And the omitted information was material to the probable cause determination. Probable cause likely would *not* have been found had the issuing judge been informed that Doe had not been proven reliable, particularly given the lack of detail in his story, the lack of information regarding his basis of knowledge, and the minimal corroboration of his story. See Simmons, 771 F. Supp. 2d at 918 (finding that the lack of indicia of reliability was particularly critical to the probable cause determination given the sparse details in the CI's story and minimal police corroboration).

Because this, therefore, provides a third basis for rebutting the presumption of good faith, the Leon exception to the exclusionary rule is not applicable in this case.

**C.** **Because the good faith exception does not apply, the exclusionary rule requires that all evidence seized pursuant to the warrant and all evidence obtained as fruits of the illegal warrant be suppressed.**

As set forth in section II.B. above, the good faith exception to the exclusionary rule does not apply in Glover's case for three reasons. The exclusionary rule thus requires suppression of the evidence obtained in this case from execution of the search warrant and any evidence obtained as the fruits of the warrant's execution.

The exclusionary rule is a judicially created remedy, aimed at curbing overly zealous police action. United States v. Swift, 220 F.3d 502, 506–07 (7th Cir. 2000). It tells police that if they obtain evidence illegally, they will not ordinarily be allowed to use it against the suspect they are after. Swift, 220 F.3d at 506–07. The deterrent purpose of the exclusionary rule "necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right." Michigan v. Tucker, 417 U.S. 433, 447 (1974). By suppressing evidence obtained as a result of such conduct, courts hope to instill in the police "a greater degree of care toward the rights of an accused." Tucker, 417 U.S. at 447. The Supreme Court has determined that the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced "by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred." United States v. Liss, 103 F.3d 617, 621 (1999).

The exclusionary rule "prohibits introduction into evidence of tangible materials seized during an unlawful search and of testimony concerning knowledge acquired during an unlawful search." Murray v. United States, 487 U.S. 533, 536 (1988). In order to make effective the

45

fundamental constitutional guarantees of sanctity of the home and inviolability of the person, the Supreme Court has held that evidence seized during an unlawful search could not constitute proof against the victim of the search.  Wong Sun v. United States, 371 U.S. 471, 484 (1963). The exclusionary prohibition extends as well to the indirect as the direct products of such invasions.  Wong Sun, 371 U.S. at 484.  For example, if the arresting officers lacked probable cause and an arrest is invalid, evidence discovered as a result of that arrest is subject to suppression under the Fourth Amendment as the fruit of an illegal arrest.  United States v. Ho, 94 F.3d 932, 935 (5th Cir. 1996).

With respect to confessions, a confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is sufficiently an act of free will to purge the primary taint.  Taylor v. Alabama, 457 U.S. 687, 690 (1982).  If Miranda warnings were viewed as a talisman that cured all Fourth Amendment violations, then the constitutional guarantee against unlawful searches and seizures would be reduced to a mere form of words.  Taylor, 457 U.S. at 690.  The Miranda warnings are an important factor in determining whether the confession is obtained by exploitation of an illegal arrest.  Brown v. Illinois, 422 U.S. 590, 603-04 (1975).  However, they are not the only factor to be considered.  Brown, 422 U.S. at 603-04.  The temporal proximity of the arrest and confession, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct are all relevant.  Id.

In Glover's case, Officer Brown's deficient affidavit did not provide a substantial basis for establishing probable cause to issue the warrant, and the good faith exception is rebutted on

multiple grounds. The search of Glover's person and residence were therefore in contravention of the Fourth Amendment and the fruits of those searches should be suppressed. In addition, given the temporal proximity of the searches and Glover's post-arrest statements and the fact that there were no intervening circumstances to break the causal connection between the illegal searches and Glover's statements, those statements must also be suppressed as fruits of the poisonous tree. Suppression of the evidence in this case will serve the purposes of the exclusionary rule and the societal interests it protects.

**III.**     <u>**A word about the potential need for a hearing on this motion.**</u>

It is Glover's position that a hearing is not needed to resolve any factual issues regarding this motion because he relies entirely on the law enforcement documents provided by the government as discovery in this case. However, Glover would request a hearing on this motion to the extent that this motion may have raised any factual disputes.

It is also Glover's position that a hearing is not needed with respect to the <u>Leon</u> good faith exception analysis because Glover claims to rebut the good faith presumption by multiple means and only one means must be established to rebut the presumption of good faith. However, if the Court were to reject Glover's first two means of rebutting the good faith presumption, leaving only the third means dealing with a <u>Franks</u> violation, Glover would request a <u>Franks</u> hearing only insofar as necessary for the Court to fully analyze the good faith exception with respect to Glover's allegation that material omissions were made in the affidavit in reckless disregard for the truth.

WHEREFORE, for all the reasons set forth above, Defendant Tyrice Glover respectfully requests that this Honorable Court enter an order suppressing all evidence obtained as a result of the illegal searches of Glover's person and residence, and any fruits derived from those searches, and that a hearing be granted only insofar as necessary for the proper resolution of this motion.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
Carol A. Brook
Executive Director

By:    s/ Rose Lindsay-Guimarães
ROSE LINDSAY-GUIMARÃES
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, Illinois 60603
(312) 621-8341

## CERTIFICATE OF SERVICE

The undersigned, Rose Lindsay Guimarães, an attorney with the Federal Defender Program, hereby certifies that the following document:

## MOTION TO SUPPRESS EVIDENCE

was served on August 31, 2012, in accordance with Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), pursuant to the district court's ECF system as to ECF filers, and was sent by first-class mail or by hand delivery to non-ECF filers, if any.

By:     s/ Rose Lindsay-Guimarães
        ROSE LINDSAY-GUIMARÃES
        FEDERAL DEFENDER PROGRAM
        55 E. Monroe St., Suite 2800
        Chicago, Illinois 60603
        (312) 621-8341