## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 10 CR 981 |
| | ) | |
| TYRICE GLOVER | ) | |

### MEMORANDUM OPINION AND ORDER

The indictment in this case charges the defendant, Tyrice Glover, with firearms violations and possession of heroin with intent to distribute. The firearms and heroin were seized by the Chicago police pursuant to a search warrant issued by Cook County Circuit Court Judge David A. Skryd III. The defendant has moved to suppress the items seized. He argues that the affidavit submitted to Judge Skryd failed to establish probable cause for the issuance of the warrant.

The affidavit (labeled a "Complaint for Search Warrant") was presented to Judge Skryd by Chicago police officer Jason E. Brown on July 23, 2010. It requests a warrant to search the defendant, Tyrice Glover, and the premises known as "905 N. Kedvale (Single Family Home), Chicago, Illinois, County of Cook" and to seize "Two handguns (one black semiautomatic handgun and one black 38 cal. revolver), any ammunition or assorted attachments, and any documents showing or establishing proof of residency" that

constituted evidence of the offense of "unlawful use of a weapon by a convicted felon."[1]  Officer Brown's affidavit recited:

> Today, July 23, 2010 your Affiant had the opportunity to speak with an individual whom for the limited purpose of this complaint will be referred to as John/Jane Doe [hereafter "Doe"].   Doe related that he/she had information related to an individual known to Doe as "T.Y." who lives at 905 N. Kedvale Chicago, Illinois and who is presently in possession of two handgun(s) (one black semiautomatic handgun and one black 38 cal. revolver) in violation of 720ILCS5/24-1(a)(1), UUW by Felon.

The affidavit went on to state that officer Brown showed Doe a Chicago Police Department photograph of "Tyrice Glover a/k/a 'T.Y.' who was most recently arrested on January 25, 2010" and had provided his home address as 905 N. Kedvale in Chicago.   Doe positively identified Glover as the same individual Doe witnessed in possession of the two handguns "while in Glover's residence located at 905 N. Kedvale Chicago, Illinois on July 22, 2010."

Officer Brown stated that Glover had been released from state custody on May 15, 2009 and was placed on parole to the address of 905 N. Kedvale.  (Aff. at 1-2.)

Quoting further from the affidavit:

> Doe explained further that GLOVER had a "dope spot" which Doe described as a street level point of sale for narcotics, in this case heroin, which GLOVER supplied and oversaw the day to day operations of.  Doe stated further that GLOVER is a member of the Traveler Vice Lords and that he is also part of a "stick up crew" which Doe described as a group of lawless individuals that would

---

[1]/  The elements of this offense are (1) the knowing possession or use of a firearm, and (2) a prior felony conviction.  People v. Gonzalez, 600 N.E.2d 1189, 1192-93 (Ill. 1992).

>identify good victims (individuals who possessed large
>amounts of money and/or narcotics) and then rob them.
>Doe stated that it was because of GLOVER's involvement in
>both of these illegal activities that GLOVER keeps and
>stores his handguns in his residence at 905 N. Kedvale.
>Doe also stated that he/she has seen GLOVER in possession
>of these two handguns and others many times over the
>course of the past six weeks and that on each occasion it
>was while inside GLOVER's residence at 905 N. Kedvale
>Chicago, Illinois.

(Aff. at 2.)

Officer Brown and Doe drove down the 900 block of North Kedvale, and Doe pointed out the red-brick, single-family home located at 905 N. Kedvale as the place where he had witnessed Glover in possession of the two described handguns the previous day. (Aff. at 2.)

Officer Brown then reviewed Glover's criminal history and learned that Glover is a "two time convicted felon and that he is currently on parole after being convicted of home invasion with a firearm on October 20, 2005 and sentenced to fourteen years IDOC, case number 03CR0313303." (Aff. at 2.)

Both officer Brown and Doe appeared before Judge Skryd, and both signed the affidavit. We have no evidence one way or the other as to whether Judge Skryd asked any questions of Doe.

### Glover's Challenge to the Affidavit

Glover concedes that his status as a convicted felon is established by the affidavit, but he argues that the affidavit does not show probable cause to believe that he knowingly possessed firearms or that firearms would be found at the Kedvale address.

This is because the affidavit, in Glover's view, failed to establish Doe's reliability as an informant. The affidavit omitted too much. It did not state whether Doe had previously provided the police with reliable information, nor did it explain Doe's relationship to Glover or give any indication of why he was present with Glover at the Kedvale address on July 22 or on multiple occasions during the previous six weeks. The affidavit is also silent as to how Doe knew about Glover's "dope spot" and the "stick up crew" and how he knew "that it was because of Glover's involvement in both of these illegal activities that Glover keeps and stores his handguns in his residence at 905 N. Kedvale."

In his reply brief at page 5, Glover suggests that Doe's claim that Glover was "in possession" of firearms, without detail, might mean only that Glover was in "constructive possession" rather than "actual" possession. This would be problematic inasmuch as Glover was not the only resident at the Kedvale address.

Glover's conclusion is that the "bare bones affidavit," Def.'s Mot. at 34, did not give Judge Skryd probable cause to believe that Glover knowingly possessed firearms or that firearms would be found at the Kedvale address.

## The Government's Response

The government points out that the information provided by Doe was based on personal observations made just one day prior to his appearance before Judge Skryd. He swore to the information before

the judge, under penalty of perjury.  The judge had an opportunity to observe Doe and to form an impression of his credibility.  The government points out that there is no requirement that the informant have previously provided reliable information, <u>United States v. Mitten</u>, 592 F.3d 767, 774 (7th Cir. 2010), nor any specific requirement as to the amount of corroborative detail an affidavit must contain, <u>United States v. Searcy</u>, 664 F.3d 1119, 1123 (7th Cir. 2011).

The government suggests a reasonable explanation for the lack of detail as to the circumstances in which Doe made his observations:

> John Doe warrants are typically used in cases such as this one, which involve narcotics, firearms, violence and gang members.  If a warrant recited the extensive detail that the defendant demands but the Fourth Amendment does not require, the defendant might very well discover the identity of the informant and subject the informant to grave danger.

(Gov't's Resp. at 14 (footnote omitted).)

The government states that "the informant began providing information to the Chicago Police Department around 2004 ... Officer Brown had previously relied upon information provided by the informant, including when preparing other search warrant applications, and Officer Brown would testify that the informant has consistently provided truthful information to the police." (Gov't's Resp. at 14-15.)

The government goes on to say that Doe has approximately 14 convictions, including 11 for drug offenses and 3 for non-drug offenses. "The informant provided information with the hope of receiving compensation, and he was paid approximately $450 following the execution of the search warrant in this case." (Gov't's Resp. at 15 n.6.)

The information concerning Doe's history of providing reliable information would have strengthened the affidavit (and, as far as we can tell, would not have given Glover a clue to Doe's identity.) The information about Doe's prior criminal record would not have surprised Judge Skryd, who certainly could not have presumed Doe to be a model citizen. Someone who had made the observations at the Kedvale address and who was knowledgeable about Glover's criminal operations would in all likelihood be a criminal associate of Glover's, and his criminal record would not detract from the credibility of his affidavit.

## Discussion

We think the government has the better of the argument. The defendant has the burden of showing the absence of probable cause. United States v. Longmire, 761 F.2d 411, 417 (7th Cir. 1985). The defendant's arguments fall short of persuading us that the warrant was issued without probable cause.

That the affidavit doesn't explain how Doe happened to be in the position to make the observations and acquire the knowledge set

forth in the affidavit is not as disturbing to the court as it is to the defendant.  The affidavit is either true or it isn't, and Doe knew that the answer would be obtained the very day he swore to the affidavit before Judge Skryd.  If the firearms had been at the Kedvale address just a day before, and in fact had been "stored" there for at least six weeks prior for use in Glover's criminal enterprises, surely they would still be there when the warrant was executed.  If they weren't, this would raise a substantial question as to whether Doe had perjured himself, and Doe had to know this. For this reason, we think the fact that Doe appeared before the judge and gave an oath is of some significance.  We agree with the defendant that we cannot assume Judge Skryd asked Doe any questions, but, notwithstanding that, Doe's having appeared before the judge and given an oath on something as easily verifiable as the presence of the firearms at the Kedvale address tends to enhance his credibility.

Another consideration bearing on the plausibility of Doe's affidavit is the matter of motive.  What motive would he have to lie about Glover?  The only one that occurs to the court is ill will or a desire for revenge.  But if the affidavit was false, and Doe did not know that firearms were present on the premises, he would have known that the search would come up with nothing and Glover would be unscathed.  So we are unable to discern a reason Doe would have given a false affidavit.

We disagree with the defendant's argument that the reference to "possession" in the affidavit could refer to constructive rather than actual possession.  That Doe, or even officer Brown, would think in terms of the legal concept of constructive possession is unlikely, but, aside from that, the affidavit made quite clear that Doe meant actual possession.  At page 2, line 3 of the affidavit, there is a reference to Glover being "the same individual Doe witnessed in possession of the two handguns."  At line 7 of the second paragraph on page 2, Doe states that "he/she has <u>seen</u> Glover in possession of these two handguns and others many times over the course of the past six weeks" (emphasis added), and at line 3 of the second full paragraph, it was when Doe and Brown were passing the Kedvale address that Doe "explained that it was there that Doe witnessed Glover in possession of two described handguns on July 22, 2010."  The common-sense interpretation of this language is that Doe saw Glover in actual possession of the firearms.

Another at least slightly relevant fact recited in the affidavit is that at an earlier time in his life Glover used a firearm for a criminal purpose.  In checking Glover's criminal history, officer Brown determined that Glover was "currently on parole after being convicted of home invasion with a firearm on October 20, 2005 and sentenced to fourteen years IDOC."  (Aff. at 2.)

We find, based on the totality of the circumstances, that the affidavit did establish probable cause for the issuance of the search warrant.

## Good-Faith Exception

The government makes an alternative argument that even if probable cause were lacking, the good-faith exception to the warrant rule recognized in <u>United States v. Leon</u>, 468 U.S. 897 (1984), is applicable to this case. The defendant argues that the exception does not apply, for two reasons. First, officer Brown "could not have reasonably believed that the facts in the affidavit were sufficient to support probable cause." (Reply at 13.) Second, officer Brown recklessly omitted from the affidavit information that he knew was relevant to probable cause, namely the facts concerning Doe's criminal history. (Reply at 14.)

We have just held that the affidavit was sufficient, so we do not share defendant's view that officer Brown should have known it was insufficient.

As far as the reckless concealment of Doe's criminal background is concerned, we believe that this background would not have caused Judge Skryd to deny the warrant. The most likely explanation for Doe's intimate knowledge of Glover's criminal activities is that he had some criminal association with Glover, and a revelation of Doe's extensive record would not have damaged his credibility. In any event, Glover is probably incorrect in

assuming that it was officer Brown who prepared the affidavit. We know that officer Brown appeared before an assistant state's attorney prior to going before the judge, and in our experience it is the assistant state's attorney who prepares the affidavit, not the police officer. The wording of the affidavit is likely that of the attorney, who decided what to put in and what to leave out. But regardless of who prepared the affidavit, there is no evidence that officer Brown recklessly omitted any information he believed was material to the question of probable cause. The good-faith exception applies to this case.

### Franks Hearing

The defendant requests a <u>Franks</u> hearing to resolve any disputes of fact concerning his claim that officer Brown acted recklessly in omitting Doe's criminal history from the affidavit. In view of our finding that officer Brown did not act recklessly, we see no need for a <u>Franks</u> hearing.

### CONCLUSION

The defendant's motion to suppress [49] is denied. The defendant's request for a <u>Franks</u> hearing is also denied.

DATE:          March 1, 2013

ENTER:         _____
               John F. Grady, United States District Judge